RECORD NUMBER: 14-4070

# United States Court of Appeals

*for the*

# Fourth Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

CHRISTOPHER LEE FOSTER, a/k/a Capone,

*Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

# OPENING BRIEF OF APPELLANT

WILLIAM F. X. BECKER
ATTORNEY AT LAW
260 East Jefferson Street
2nd Floor
Rockville, Maryland 20850
(301) 340-6966

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-4070__    Caption: __USA v. Christopher Lee Foster__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Christopher Lee Foster__
(name of party/amicus)

_____

who is _____the Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ William Francis Xavier Becker          Date: ____30 January 2014____

Counsel for: Christopher Lee Foster

## CERTIFICATE OF SERVICE
*****************************

I certify that on ____30 January 2014____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Antonio J. Reynolds
Assistant United States Attorney
Office of the United States Attorney
4th Floor
36 South Charles Street
Baltimore, MD 21201

/s/ William Francis Xavier Becker                    ____30 January 2014____
        (signature)                                          (date)

- 2 -

# <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ........................................................................ ii

JURISDICTION STATEMENT .................................................................... 1

STATEMENT OF ISSUE PRESENTED FOR REVIEW ............................ 2

STATEMENT OF THE CASE ...................................................................... 2

      STATEMENT OF FACTS ..................................................... 5

SUMMARY OF ARGUMENT ................................................................... 11

ARGUMENT ............................................................................................. 11

      INTRODUCTION ............................................................... 11

      STANDARD OF REVIEW .................................................. 12

      DISCUSSION ...................................................................... 14

      CONCLUSION .................................................................... 27

STATEMENT OF RELIEF ........................................................................ 27

STATEMENT REGARDING ORAL ARGUMENT ................................. 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Abbott v. United States,*
    -U.S.-, 131 S. Ct. 18 (2010)................................................................ 16

*Alleyne v. United States,*
    -U.S.-, 133 S. Ct. 2151 (2013)................................................ 19, 20, 21

*Almendarez-Torres v. United States,*
    523 U.S. 224, 118 S. Ct. 1219 (1998) ................................................ 20

*Apprendi v. New Jersey,*
    530 U.S. 466, 120 S. Ct. 2348 (2000) ........................................ 20, 25

*Atalla v. Abdul-Baki,*
    976 F. 2d 189 (4th Cir. 1992) .............................................................. 23

*Bailey v. United States,*
    516 U.S. 137, 116 S. Ct. 501 (1995) ................................................. 16

*Barker v. Gonzales,*
    347 U.S. 637, 74 S. Ct. 822 (1954) ............................................. 23, 24

*Barrett v. United States,*
    423 U.S. 212, 96 S. Ct. 498 (1976) ................................................... 16

*Bell v. Wulfish,*
    441 U.S. 520, 99 S. Ct. 1861 (1979) ................................................. 26

*Bond v. United States,*
    -U.S.-, 134 S. Ct. 2077 (2014)........................................................... 18

*Bradshaw v. Stumpf,*
    545 U.S. 175, 125 S. Ct. 2398 (2005) ............................................... 17

*Brady v. United States,*
    397 U.S. 742, 90 S. Ct. 1463 (1970) ...................................... 11, 14, 17

*Descomps v. United States*,
-U.S.-, 133 S. Ct. 2276 (2013)........................................................... 26

*Faris v. United States*,
388 F. 3d 452 (4th Cir. 2004) ............................................................ 17

*Harris v. United States*,
536 U.S. 545, 122 S. Ct. 2406 (2002) ................................................. 19

*Henderson v. Morgan*,
426 U.S. 637, 96 S. Ct. 2253 (1976) ................................................... 24

*In Re Winship*,
397 U.S. 358, 90 S. Ct. 1068 (1970) ................................................... 20

*Indiana v. Edwards*,
554 U.S. 164, 128 S. Ct. 2379 (2008) ................................................. 17

*Mabry v. Johnson*,
467 U.S. 504, 104 S. Ct. 2543 (1984) ................................................. 15

*McCarthy v. United States*,
394 U.S. 459, 89 S. Ct. 1166 (1969) ................................................... 18

*McMann v. Richardson*,
397 U.S. 759, 90 S. Ct. 1441 (1970) ................................................... 11

*Missouri v. Frye*,
-U.S.-, 132 S. Ct. 1399 (2012)...................................................... 11, 14

*Moore v. Michigan*,
255 U.S. 155, 78 S. Ct. 191 (1957) ..................................................... 14

*Parker v. North Carolina*,
397 U.S. 790, 90  S. Ct. 1458 (1970) .................................................. 11

*Puckett v. United States*,
556, U.S. 129, 129 S. Ct. 1423 (2009) ................................................ 14

iii

*Rhodes v. Chapman*,
    452 U.S. 337, 101 S. Ct. 2392 (1981) ................................................ 26

*Ricketts v. Adamson*,
    483 U.S. 1, 107 S. Ct. 2680 (1987) .................................................... 21

*Santobello v. New York*,
    404 U.S. 257, 261 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971) ............... 14

*Smith v. O'Grady*,
    312 U.S. 329, 61 S. Ct. 572 (1941) .................................................... 24

*Smith v. United States*,
    508 U.S. 223, 113 S. Ct. 2050 (1993) ......................................... 16, 24

*Strickland v. Washington*,
    466 U.S. 668, 104 S. Ct. 2052 (1984) ................................................ 10

*Tapia v. United States*,
    -U.S.-, 131 S. Ct. 2382 (2011) ........................................................... 27

*Thrasher v. United States*,
    721 F. Supp. 2d 480 (E.D. Va. 2010) ................................................. 17

*Tollett v. Henderson*,
    411 U.S. 258, 93 S. Ct. 1602 (1973) .................................................... 6

*United States v. Blick*,
    408 F. 3d 162 (4th Cir. 2005) ............................................................. 8

*United States v. Broce*,
    488 U.S. 563, 109 S. Ct. 757 (1989) .................................................... 6

*United States v. Bryant*,
    540 Fed. App. 241 (14 Jan. 2014) ...................................................... 19

*United States v. Davila*,
    -U.S.-, 133 S. Ct. 2139 (2013) ........................................................... 14

*United States v. DeFusco*,
　　949 F. 2d 114 (4th Cir. 1991) *cert. denied*,
　　503 U.S. 997, 112 S. Ct. 1703 (1992) .......................................... 15, 19

*United States v. Gaudin*,
　　515 U.S. 506, 115 S. Ct. 2310 (1995) ................................................ 20

*United States v. Groce*,
　　398 F. 3d 679 (4th Cir. 2005) ...................................................... 18, 19

*United States v. Hawkins*,
　　675 F. Supp. 2d 617, 619 (E.D. Va. 2009) ........................................ 15

*United States v. Holbrook*,
　　368 F. 3d 415 (4th Cir. 2004) ............................................................ 15

*United States v. Lambrey*,
　　974 F. 2d 1389 (4th Cir. 1992) *cert. denied*,
　　513 U.S. 1060, 115 S. Ct. 672 (1994) ........................................ 12, 15

*United States v. McQueen*,
　　108 F. 3d 64 (4th Cir. 1997),
　　*vacated on other grounds*, 545 U.S. 1125, 125 S. Ct. 2934 (2005) ... 15

*United States v. Peak*,
　　992 F. 2d 39 (4th Cir. 1993) ............................................................. 10

*United States v. Thompson-Riviere*,
　　561 F. 3d 345 (4th Cir. 2009) ........................................................... 12

*United States v. Vann*,
　　535 U.S. 55, 122 S. Ct. 1043 (2002) ........................................... 13, 21

*United States v. Willis*,
　　992 F. 2d 489 (4th Cir. 1993) .............................................................. 6

*Watson v. United States*,
　　552 U.S. 74, 128 S. Ct. 579 (2007) .................................................. 16

v

**Rules and Statutes:**

8 U.S.C. § 155(a) ....................................................................... 23

18 U.S.C. § 2 .......................................................................... 5, 6

18 U.S.C. § 924(c) ............................................................... 3, 5, 16

18 U.S.C. § 924(c)(1)(A)(ii) ................................................... 3, 6, 18

18 U.S.C. § 924(c)(1)(D)(ii) ......................................................... 18

18 U.S.C. § 924(c)(4) ................................................................. 18

18 U.S.C. § 924(e) .................................................................... 26

18 U.S.C. § 1951(a) ............................................................. *passim*

18 U.S.C. § 3231 ....................................................................... 1

21 U.S.C. § 841 ...................................................................... 3, 5

28 U.S.C. § 1291 ....................................................................... 2

28 U.S.C. § 1294(1) .................................................................... 2

28 U.S.C. § 2255 ................................................................ 1, 9, 13

C.J.S. *Statutes* § 418 ............................................................... 22

Fed. R. App. P. 3 ...................................................................... 1

Fed. R. App. P. 4(b) ................................................................... 1

Fed. R. App. P. 28(a)(4) ............................................................... 1

Fed. R. App. P. 28(a)(7) ............................................................... 5

Fed. R. App. P. 28(a)(6) ............................................................... 2

Fed. R. App. P. 32.1 .................................................................. 19

Fed. R. Civ. P. 18 ....................................................................... 1

Fed. R. Crim. P. 11 ............................................................. *passim*

Gun Control Act of 1968, 82 Stat. 1213 .................................... 16

 **Other Authorities:**

Asher, Joshua D., "Unbinding The Bound:  Reforming The Availability
Of Sentence Modifications For Offenders Who Entered Into 11 (c) (1)
(C) Plea Agreements,"
        111 Columbia L. J. 1004 (June 2011) ............................... 12

Restatement (Second) of Contracts, § 203(3)(b) .......................... 23

## JURISDICTION STATEMENT[1]

Original jurisdiction was vested with the United States District Court for Maryland, Northern Division, holding court in Baltimore, in accordance with 18 U.S.C. §3231 and Rule 18 of the Federal Rules of Civil Procedure.

In the proceedings before the lower court (*United States of America v. Christopher Lee Foster*, No.: 1:10-CR-00644-CCB-2), after a plea of guilty (12 May 2011) [J.A. 23] and sentencing (1 December 2011) [J.A. 67; see also J.A. 84], an amended judgment as to Christopher Lee Foster was entered on the 6th of January, 2014 (J.A. 122).

The amended judgment was necessitated by the appellant's *pro se* Motion to Vacate his guilty plea pursuant to 28 U.S.C. §2255 (30 November 2012, J.A. 90 and 97).

The *pro se* request to vacate the appellant's guilty plea was denied by a Memorandum from the plea/sentencing court on 31 December 2013 (J.A. 120). An amended judgment was entered on the 6th of January, 2014 (J.A. 122).

The appellant, Christopher Lee Foster, *pro se*, timely filed a written notice of appeal to the amended judgment of 6 January 2014 (J.A. 128). See Federal Rules of Appellate Procedure (FRAP) 3 and 4(b).

---

[1]    See Federal Rules of Appellate Procedure, Rule 28(a)(4).

1

The undersigned was appointed for purposes of this appeal by way of an Order of this Court dated the 24th of January, 2014 (J.A. 131).

Jurisdiction is vested with this Court in accordance with 28 U.S.C. §1291 and §1294(1).

This appeal is from a final judgment from the United States District Court for the District of Maryland.

## STATEMENT OF THE ISSUE
## PRESENTED FOR REVIEW

Notwithstanding the assistance of counsel, a written plea agreement pursuant to Rule 11(c), and a plea colloquy between the Court and the defendant, is it error to permit a guilty plea to stand as knowingly, voluntarily, and intelligently entered, if an essential and technical term of the plea agreement is never defined or explained to the defendant.

## STATEMENT OF THE CASE[2]

### Statement of the Case

The appellant, Christopher Lee Foster, was charged in a twelve count indictment,[3] returned by the United States Grand Jury, sitting in Baltimore. The indictment was returned on the 19th of October, 2010. (J.A. 10.)

---

[2]     FRAP, Rule 28(a)(6).
[3]     Essentially, the indictment alleged offenses involving the interference of interstate commerce by robbery, 18 U.S.C. §1951(a), possession and brandishing

2

On the 26th of October, 2010, the appellant was arraigned before Magistrate Judge James K. Bredor.  (See J.A. 1 at entry 4).

The Order for the appointment of counsel for Christopher Lee Foster appears to have been filed the next day (J.A. 1 at entry 9).  Counsel's Notice of Appearance, that being Richard B. Bardos, Esquire, for Christopher Lee Foster, is found at J.A. 1 at entry 26, on the 19th of November, 2010.

On the 12th of May, 2011, the appellant entered a plea of guilty to Count 1 (robbery affecting interstate commerce (18 U.S.C. §1951(a)) and Count 6 (possess and brandish a firearm – a shotgun – so as to interfere with interstate commerce by robbery – (18 U.S.C. §924(c)(1)(A)(ii))).

This plea agreement was set out in a 10-page letter (J.A. 57) dated the 6th of May, 2011, executed on the 12th of May, 2011, and filed on the 13th of May, 2011. The plea letter bears the signatures of the Assistant United States Attorney; the appellant, Christopher Lee Foster; and his counsel, Richard Bardos.

The plea was in accordance with Rule 11(c)(1)(C) – with a disposition of 240 months imprisonment established as the disposition.

Sentence was imposed on the 1st of December, 2011 (J.A. 67 and 84).  As to Count 1, a term of imprisonment of 156 months was imposed; as to Count 6, 84 months, to run consecutively, was imposed (for a total term of 240 months

---

of a firearm in furtherance of a crime of violence, 18 U.S.C. §924(c), and the distribution of marijuana, 21 U.S.C. §841.

3

imprisonment);[4] a three-year period of supervised release for each count was imposed, along with a special assessment of $100.00.  The remaining ten counts were dismissed.

On the 30th of November, 2012, the appellant filed a Motion to Vacate (J.A. 90 and 97).  The appellant's *pro se* request was opposed by the United States on 13 September 2013 (J.A. 113).

By way of a Memorandum dated 31 December 2013 (J.A. 120), the lower court, Judge Catherine C. Blake, denied the request to vacate, except as to the failure of trial counsel to note an appeal.[5]

An amended judgment (essentially the same as the earlier judgment of 5 December 2011 (J.A. 122)) was entered on the 6th of January, 2014 (J.A. 122).

The appellant's *pro se* Notice of Appeal was filed on the 17th of January 2014 (J.A. 128).

By way of an Order of this Court dated the 24th of January, 2014 (J.A. 131), the undersigned was appointed for purposes of this appeal.

---

[4]    Regrettably, counsel for the appellant at sentencing described the sentence as 'appropriate.'  (J.A. 67, Transcript of Sentencing Hearing – 1 December 2011 at p. 9).
       The sentencing court used the phrase that "240 months is reasonable…."  *Ibid.*, at p. 12.
[5]    The 'plea letter' did contain a Waiver of Appeal provision (see p. 7, ¶13).

4

## Statement of the Facts[6]

Christopher Lee Foster was one of three individuals charged in a twelve count indictment returned by a federal grand jury sitting in Baltimore, Maryland, within the Northern District of the United States District Court for Maryland.

The indictment was filed with the United States District Court, sitting in Baltimore, Maryland, on the 19th of October, 2010. The timeframe for the alleged offenses was April 2010 through September 2010. The location for the alleged offenses was the eastern shore of Maryland, particularly Salisbury, Maryland.

The alleged offenses involved the interference of interstate commerce by robbery (18 U.S.C. § 1951(a)), conspiracy (The Hobbs Act, 18 U.S.C. §1951(a)), possession and brandishing of a firearm in furtherance of a crime of violence (18 U.S.C. §924 (c)), possession with intent to distribute marijuana (21 U.S.C. §841), and aiding and abetting (18 U.S.C. §2).

The initial appearance/arraignment for Christopher Lee Foster was held on the 26th of October, 2010 (J.A. 1 at entry 10 and 11). Counsel was appointed for Christopher Lee Foster. Richard B. Bardos, Esquire, was appointed as counsel for Christopher Lee Foster (J.A. 1 at entry 9).

---

[6]    FRAP, Rule 28 (a) (7)

The appellant did prepare and file a *pro se* motion requesting a pretrial hearing (J.A. 1 at entry 66, 21 March 2011). Within that *pro se* motion, the appellant presented six (6) prayers for relief.[7]

It appears in February 2011, the appellant corresponded with the trial court regarding his appointed counsel. By the 24th of March, 2011, any concerns regarding trial counsel's services were resolved. (J.A. 1 at entry 68, 24 March 2011).

On the 12th of May, 2011, the appellant, Christopher Lee Foster, entered a plea of guilty to Count 1 (conspiracy to obstruct interstate commerce by robbery, 18 U.S.C. §1951(a)) and Count 6 (brandishing a firearm in furtherance of a crime of violence, 18 U.S.C. §924 (c) (1) (A) (ii) and 18 U.S.C. §2) (DE # 90).

With appointed counsel present, the appellant, Christopher Lee Foster entered his plea of guilty to Counts 1 and 6 of the indictment on the 12th of May,

---

[7]     The relief requested was:
  1)  to suppress evidence;
  2)  a quantity hearing;
  3)  bill of particulars;
  4)  to strike surplusage from the indictment;
  5)  to inspect the grand jury minutes; and
  6)  to dismiss for failure to state an offense or jurisdictional defect.
  With a plea of guilty, a defendant waives any alleged antecedent jurisdictional defect. See for example, *Tollett v. Henderson*, 411 U.S. 258, 93 S. Ct. 1602 (1973); *United States v. Broce*, 488 U.S. 563, 109 S. Ct. 757 (1989); and *United States v. Willis*, 992 F. 2d 489 (4th Cir. 1993).

6

2011.   The proceedings consist of approximately 26 pages of transcription.  (J.A. 67.)

The appellant was 'under oath' while responding to the Court's inquiry.  See J.A. 67, Transcript at p. 3.

Although the appellant was taking prescription, antipsychotic medication for his bipolar condition, Christopher Lee Foster responded that he had no difficulty in understanding 'what's going on here.'  *Ibid.*, at p. 4.  The appellant's trial counsel did state counsel's belief that Christopher Lee Foster was competent to make the decision he was making within the proceedings.  *Ibid.*, at p. 5.

As a component of the plea proceeding, the lower court did address the various trial rights that the appellant would be 'giving up' with this plea.  *Ibid*., at pp. 11-14.

The appellant did respond to the trial court that he had enough opportunity to discuss the plea agreement with his counsel.  *Ibid.,* at p. 16.

From the plea proceedings, it appears that the appellant, after being advised of his *Miranda* rights by law enforcement officials, did admit to participating in various *aspects* of the robbery.  *Ibid.,* at p. 18; emphasis added.

The plea proceeding later mentions, apparently in a colloquy between the Court and the Assistant United States Attorney, the appellant's possession of a firearm, and that the firearm was 'brandished' in furtherance of a crime of

7

violence. *Ibid*., at pp. 19-20. It does not appear, however, that this particular 'technical term' (brandished) was ever further defined and/or presented to the appellant for his clear and affirmative acknowledgement or understanding.

The plea of guilty to two counts of the indictment was pursuant to a written plea agreement, dated the 6th of May, 2011. The plea agreement was docketed on the 13th of May, 2011 (J.A. 57). The plea agreement bears the signature of the appellant, his counsel, and the Assistant United States Attorney. The 'plea letter' was pursuant to Rule 11 (c) (1) (C) in that it contained a 'binding provision' for purposes of disposition, that being 240 months imprisonment. See pp. 6-7, ¶9. In addition, the 'plea letter' contained provisions as to the Waiver of Appeal.[8] See pp. 7-8, ¶13.

A forensic evaluation of the appellant was ordered sealed by Judge Catherine C. Blake, the trial judge who accepted the appellant's plea of guilty (J.A. 1 at entry 119). It appears that between July 2011 and September 2011, the appellant was undergoing a psychological evaluation at the Butner Federal Correctional Institution, North Carolina, Medical Center. See Appellant's Memorandum of 4 February 2013, J.A. 97 at p. 3, ¶11.

---

[8]    See for example, *United States v. Blick*, 408 F. 3d 162 (4th Cir. 2005).

At the conclusion of the plea proceeding, the trial court mentioned a finding of competence of the appellant to enter these two guilty pleas. J.A. 67, Transcript at p. 27.

The appellant was initially sentenced on the 1st of December, 2011.[9] The sentence imposed was as follows:

-imprisonment for 156 months on Count1;

-imprisonment for 84 months on Count 6, with that sentence to run consecutive to the sentence on Count 1;

-supervised release for three years on each count; and

-a special assessment of $100.

The remaining 10 counts of the indictment were dismissed (J.A. 1 at entry 122).

On the 30th of November, 2012, the appellant, in a *pro se* capacity, moved to vacate his conviction, pursuant to 28 U.S.C. §2255 (J.A. 90). The appellant's *pro se* memorandum in support of this request was filed with the lower court on 4th of February, 2013 (J.A. 97). The theme of the appellant's request for relief was that the appellant was denied the effective assistance of counsel and that the appellant's entry of a guilty plea was involuntary due to the conduct of his appointed counsel. See Appellant's Memorandum, J.A. 97, pp. 5-11.

---

[9] The judgment was entered on 5 December 2011 (J.A. 84).

9

The appellant's prayer for relief was opposed by the United States by way of a memorandum filed on the 13th of September, 2013 (J.A. 113).

On the 31st of December, 2013, by way of a Memorandum Order, without a hearing, the appellant's request to vacate the guilty plea was denied by Judge Catherine C. Blake (J.A. 120). The lower court reasoned that the appellant failed to show either deficient performance or prejudice pursuant to the decision of *Strickland v. Washington*, 466 U.S. 668, 687. 104 S. Ct. 2052 (1984). (J.A. 1 at entry 137 at p. 1.) In addition, the lower court noted that the appellant's mental evaluation contained a finding of competency. *Ibid.*, at p. 2.

Even though the plea agreement contained a waiver of appeal rights, the lower court mentioned in its Memorandum Order that the failure of trial counsel to note an appeal at the request of the appellant was considered ineffective assistance of counsel, pursuant to *United States v. Peak*, 992 F. 2d 39, 42 (4th Cir. 1993). With that finding, a new judgment was entered, affording the appellant 14 days thereafter to note his appeal.

The amended judgment was entered on the 6th of January, 2014 (J.A. 122). The same sentence was imposed. The appellant, Christopher Lee Foster, acting *pro se*, timely noted this appeal, in writing, to the amended judgment, on the 17th of January, 2014 (J.A. 128).

10

By way of an Order issued by the Court on the 24th of January, 2014, and noted with the lower court (J.A. 1 at entry 145), the undersigned was appointed for purposes of this appeal.  (J.A. 131.)

## SUMMARY OF THE ARGUMENT

Although a written plea agreement – secured and proceeding with the assistance of counsel – will more than likely resolve a criminal proceeding if the central, essential, and technical terms of the particular offense are not defined or explained, the guilty plea is flawed from a constitutional perspective, and the plea and sentence shall be vacated.

## ARGUMENT

### Introduction

A guilty plea represents a significant component of the criminal justice system.   In fact, 97% of federal convictions and 94% of state convictions are the result of guilty pleas.[10]  See *Missouri v. Frye*, -U.S.-, 132 S. Ct. 1399, 1407 (2012); other citation omitted.

---

[10]    Since 1970, the Supreme Court has made clear that it is not *per se* unconstitutional to offer a defendant an inducement to plead guilty.  See *Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463 (1970), *McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441 (1970), and *Parker v. North Carolina*, 397 U.S. 790, 90 S. Ct. 1458 (1970).

11

Notwithstanding the guilty plea in this case presented pursuant to a written plea agreement, with a binding disposition[11] and a waiver of appeal rights, if a defect is detected, this Court shall vacate the plea and the resulting disposition, and remand the case to the lower court for further attention.

**Standard of Review**

The Rule 11 plea colloquy in this instance did proceed without objection from either the appellant or his counsel.[12]  As such, the standard of review before this Court is as follows:

---

[11]    See Rule 11 (c) (1) (C) of the Federal Rules of Criminal Procedure.  "Under this form of agreement, the parties include the proposed sentence in the written plea presented to the judge."  Asher, Joshua D., "Unbinding The Bound: Reforming The Availability Of Sentence Modifications For Offenders Who Entered Into 11 (c) (1) (C) Plea Agreements," 111 Columbia L. J. 1004, 1005-1006 (June 2011).

[12]    Without the benefit of a hearing – and the appellant's *pro* se request to calculate his guilty plea being opposed by the United States – the appellant's request to vacate the guilty plea was denied by the lower court.

In that context (the denial of a request to vacate-withdrawal of a guilty plea), the standard of review is as follows:

> The decision to permit the defendant to withdraw a plea is discretionary, and our review is limited to the question of whether the district court abused its discretion.  *United States v. Lambly*, 974 F. 2d 1389, 1393 (4th Cir. 1992) (*en banc*).  A district court abuses its discretion  when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law.  *United States v. Thompson-Riviere*, 561 F. 3d 345, 348 (4th Cir. 2009).

We hold that a silent defendant has the burden to satisfy the plain-error rule and that a reviewing court may consult the whole record when considering the effect of any error on substantial rights. *United States v. Vann*, 535 U.S. 55, 59, 122 S. Ct. 1043, 1046 (2002).

Plain error review is a four-step process.

First:    there must be an error or defect – a deviation from a legal rule that has not been intentionally relinquished or abandoned (affirmatively waived) by the appellant;

Second:    the legal error is clear or obvious as contrasted with reasonable dispute;

Third:    the error affects the appellant's substantial rights; and

Fourth:    the discretion of the reviewing court to remedy the error is warranted for the error seriously affects fairness, integrity, or public reputation of the judicial proceedings.[13]

---

Although requested by the appellant, a Notice of Appeal was not filed by the appellant's trial counsel.

The appellant, by way of a *pro se* filing (dated 30 November 2012), pursuant to 28 U.S.C. §2255, sought to vacate his guilty plea (J.A. 90 *et seq.*).

By way of a Memorandum Order dated 31 December 2013 (J.A. 120), the appellant's request was denied in part and granted in part.

An Amended Judgment in a Criminal Case was entered on the 6th of January, 2014 (J.A. 122).

The appellant's *pro se* written Notice of Appeal dated the 13th of January, 2014 (J.A. 128) was filed with this Court on the 17th of January, 2014 (J.A. 128).

The undersigned was appointed by an Order of this Court on the 24th of January, 2014) (J.A. 131).

[13]    There exists a very limited class of structural errors that trigger automatic reversal because they undermine the fairness of the criminal proceeding. These include the denial of counsel of choice, denial of self-representation, denial of a

13

> See *Puckett v. United States*, 556, U.S. 129,
> 129 S. Ct. 1423, 1429 (2009) citing *United*
> *States v. Olano*, 507 U.S. 725, 113 S. Ct. 1770
> (1993); other citations omitted.

## Discussion

A guilty plea is a 'more than likely' the method for the resolution of a

criminal charge in either the federal or state criminal jurisprudence process.  See

*Missouri v. Frye, Introduction, ante*.

> Disposition of charges after plea discussions is
> not only an essential part of the process but a highly
> desirable part for many reasons.  It leads to prompt
> and largely final disposition of most criminal cases;
> it avoids much of the corrosive impact of enforced
> idleness during pre-trial confinement for those who
> are denied release pending trial; it protects the public
> from those accused persons who are prone to continue
> criminal conduct even while on pretrial release; and,
> by shortening the time between charge and disposition,
> it enhances whatever may be the rehabilitative prospects
> of the guilty when they are ultimately imprisoned.  See
> *Brady v. United States*, 397 U.S. 742, 751-752, 90 S. Ct.
> 1463, 1470-1471, 25 L. Ed. 2d 747 (1970).
> *Santobello v. New York*, 404 U.S. 257, 261 92 S. Ct.
> 495, 498, 30 L. Ed. 2d 427 (1971).

In this instance, it is correct that the appellant did proceed to the submission

of his guilty plea with the assistance of counsel.[14]  In addition, the written plea

---

public trial, and a failure to inform the jury that guilt must be proven beyond a
reasonable doubt.  See *United States v. Davila*, -U.S.-, 133 S. Ct. 2139, 2149
(2013).

[14]     See for example, *Moore v. Michigan*, 255 U.S. 155, 78 S. Ct. 191 (1957).

14

agreement did contain a 'binding' provision for the eventual disposition.[15]  Yes, and finally, the written plea agreement did contain a 'waiver of an appeal' provision.

However, if any plea agreement is to be examined in the comparative context of heightened contractual analysis[16] due to the constitutional dimensions of a plea agreement, and if technical terms within the plea agreement are not given (or explained) their technical meaning, then the plea proceedings are flawed.  The significance of the flaw in this instance warrants the review by this Court.

The flaw in this instance is the failure of anyone to pause the plea proceeding[17] – at least for an instant – to further define or explain a technical term

---

[15]    A specific sentence or sentencing range is permissible under Rule 11 of the Federal Rules of Criminal Procedure.  See *United States v. Lambrey*, 974 F. 2d 1389, 1396 (4th Cir. 1992) *cert. denied*, 513 U.S. 1060, 115 S. Ct. 672 (1994).

Sentencing considerations in exchange for a guilty plea may be demonstrative of the voluntary nature of the plea.  See *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S. Ct. 2543 (1984).

Such, however, should not be deemed unequivocally conclusive if the terms of the plea agreement are not further defined or fully explained for an individual's comprehension.

[16]    Contract principles are applied to the interpretation of plea agreements. *United States v. Holbrook*, 368 F. 3d 415, 428 (4th Cir. 2004) citing *United States v. McQueen*, 108 F. 3d 64, 66 (4th Cir. 1997), *vacated on other grounds*, 545 U.S. 1125, 125 S. Ct. 2934 (2005); see also, *United States v. Hawkins*, 675 F. Supp. 2d 617, 619 (E.D. Va. 2009).

[17]    The appellant will acknowledge that this Court will "accord deference" to the trial court as how best to conduct a plea colloquy.  See *United States v. DeFusco*, 949 F. 2d 114, 116 (4th Cir. 1991) *cert. denied*, 503 U.S. 997, 112 S. Ct. 1703 (1992).

– 'brandish' – that was central to this guilty plea with its 'pre-set' sentencing

disposition.

In this instance, the appellant plead guilty to two offenses:  the first was a

conspiracy to aid and abet in interference with interstate commerce by robbery (18

U.S.C. §1951(a) and 18 U.S.C. §2), and possession and brandishing of a firearm in

furtherance of a crime of violence (18 U.S.C. §924(c)).[18]

The precise definition of the term 'brandish' or 'brandishing of the

firearm,'[19] although defined within the statutory offense,[20] was never further

explained within the plea colloquy.

Thus, the presentation and acceptance of the guilty plea is fundamentally

flawed.

---

[18]     This statute was part of the Gun Control Act of 1968, 82 Stat. 1213.  See
*Abbott v. United States*, -U.S.-, 131 S. Ct. 18, 24 (2010).
     "The very structure of the Gun Control Act demonstrates that Congress did
not intend merely to restrict interstate sales but sought broadly to keep firearms
away from persons Congress classified as potentially irresponsible and dangerous."
*Barrett v. United States*, 423 U.S. 212, 96 S. Ct. 498, 502 (1976).
[19]     This term brandishing with its own sentencing enhancement was added in
the 1998 revision of the statute.  *Abbott, supra.*, 131 S. Ct. at p. 30.
[20]     In other sections of the statute the verb 'uses' appears.  That verb – in the
constitutional context of it being an element of the offense – has seen its definition
established by judicial decision.
     'Use' of a firearm is more than mere possession of a firearm.  *Bailey v.
United States*, 516 U.S. 137, 116 S. Ct. 501 (1995).
     One who trades a firearm for drugs 'uses' the weapon for a drug trafficking
offense.  See *Smith v. United States*, 508 U.S. 223, 113 S. Ct. 2050 (1993).
     However, one who trades drugs for a gun does not use the firearm in relation
to a drug trafficking offense.  See *Watson v. United States*, 552 U.S. 74, 128 S. Ct.
579 (2007).

The appellant's guilty plea shall not be considered as knowingly,[21] voluntarily,[22] and intelligently[23] made if all of the necessary elements that the government must prove have not been defined and explained.  See for example, *Thrasher v. United States*, 721 F. Supp. 2d 480, 487 (E.D. Va. 2010).

In *Thrasher*, the defendant, Lee Hope Thrasher, plead guilty to conspiracy to commit wire and mail fraud (in violation of 18 U.S.C. §371) and wire fraud in violation of 18 U.S.C. §1343 (see also 18 U.S.C. §2).

Lee Thrasher's *pro se* motion to vacate, set aside, or correct her sentence pursuant to 18 U.S.C. §2255 was denied.

The basis for the denial of the request to vacate the guilty plea was due to the fact that counsel made representations to the court that he had reviewed the elements of the charges with Thrasher numerous times.  *Thrasher, supra.*, 721 F. Supp. 2d at p. 488.

The same thorough review of the offense elements cannot be said of the circumstances here.  Christopher L. Foster did not have the benefit of a thorough explanation of the precise offense (brandishing the firearm).  "Consequently, if a

---

[21]     *Bradshaw v. Stumpf*, 545 U.S. 175, 182-183, 125 S. Ct. 2398 (2005).

[22]     *Brady v. United States*, 397 U.S. 742, 750, 90 S. Ct. 1463 (1970); see also for example, *Faris v. United States*, 388 F. 3d 452, 457 (4th Cir. 2004).

[23]     *Indiana v. Edwards*, 554 U.S. 164, 128 S. Ct. 2379 (2008) (discussed in the context of an individual's mental competency to stand trial but suffer a mental condition permitting the state to insist they are not competent to conduct trial proceedings themselves).

defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." *McCarthy v. United States*, 394 U.S. 459, 89 S. Ct. 1166, 1171 (1969); footnote omitted.

A central element to this plea was the concept of 'brandishing' of the weapon. When viewing the totality of the plea proceedings, this technical term, as set forth within 18 U.S.C. §924(c)(4),[24] was never fully presented to the appellant.

The significance of this verb – brandish – has not been ignored by this Court. In the decision of *United States v. Groce*, 398 F. 3d 679 (4th Cir. 2005), the defendant's conviction for bank robbery was affirmed, yet the sentence for 'brandishing' the gun was vacated.

In *Groce*, neither the district court nor the jury necessarily concluded that the gun was in the bank when the bank robbery note – referencing the presence of a gun – was presented to the bank teller.

---

[24]    The "term 'brandish' means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. §924(c)(4).
       "In settling on a fair rending of a statute, it is not unusual to consider the ordinary meaning of a defined term, particularly when there is dissonance between that ordinary meaning and the reach of the definition." *Bond v. United States*, -U.S.-, 134 S. Ct. 2077, 2091 (2014).
       The 'reach' here is whether factually the firearm was known to another person.
       Further, conviction for such a firearm offense prohibits a concurrent sentence. See 18 U.S.C. §924(c)(1)(D)(ii).
       The term of imprisonment for brandishing a firearm is not less than seven (7) years. 18 U.S.C. §924(c)(1)(A)(ii).

The statutory offense, therefore, intends that the <u>display</u> of all or part of the firearm is made known to the victim. *Ibid.*, at p. 681. The absence of this further amplification of the element of the offense flaws this particular plea proceeding.

A defendant need not receive 'a rote recitation of the elements of the offense.' See *United States v. DeFusco*, 949 F. 2d 114, 117 (4th Cir. 1991). However, the ideal of thoroughness should not be innocently overlooked in instances where the elements of the offense are technical in nature and statutorily defined. See for example, *United States v. Bryant*, 540 Fed. App. 241 (14 Jan. 2014)[25] (discussing the insufficiency to support a finding that a dangerous or deadly weapon was involved, thereby warranting that the sentence enhancement be vacated).

The importance of the central, technical term – brandish – is also illustrated in the decision of *Alleyne v. United States*, -U.S.-, 133 S. Ct. 2151 (2013) (overturning the decision of *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406 (2002)).

Allen Ryan Alleyne and an accomplice robbed a store manager as the store manager drove the store's daily deposits to the bank. It was Alleyne's accomplice who approached the manager with the gun.

---

[25]      See FRAP, Rule 32.1.

When Alleyne's presentence report was prepared, it was the presentence report that recommended the 84 month consecutive enhancement due to the 'brandishing' of the gun. Alleyne's objection to this additional, consecutive mandatory minimum sentencing enhancement was overruled.

The United States Supreme Court vacated the judgment as to the sentence.

Admittedly, the *Alleyne* case did involve a jury trial and not a defendant's submission of a guilty plea.

Yes, in the context of a jury trial, the Sixth Amendment provides that any fact which exposes a defendant to a greater punishment than otherwise legally prescribed[26] must be proven to the jury beyond a reasonable doubt.[27] *Alleyne, supra.*, 2160; see also *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000).

There is no reason not to extend this ideal to a guilty plea proceeding. Thus, this specifically defined technical term must be defined to someone such as Christopher L. Foster. "Defining facts that increase a mandatory statutory minimum to be part of the substantive offense enables the defendant to predict the

---

[26]    The narrow exception to a jury proven fact utilized to enhance punishment is that a prior conviction may be utilized to enhance the sentence. See *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219 (1998).

[27]    See *United States v. Gaudin*, 515 U.S. 506, 510, 115 S. Ct. 2310 (1995) and *In Re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068 (1970).

legally applicable penalty from the face of the indictment." *Alleyne*, 133 S. Ct. at p. 2161.[28]

The reason for the desired thoroughness of any plea colloquy is to ensure that the individual's plea of guilty is knowingly, voluntarily, and intelligently entered. See *United States v. Vann*, 535 U.S. 55, 58, 122 S. Ct. 1043 (2002).

A plea agreement is much more than a commercial contract – even though the law of commercial contracts may be of assistance in construing a plea agreement. A plea agreement is a "constitutional contract." As a 'constitutional contract,' a plea agreement must be understood in light of the rights and obligations created by the Constitution. See *Ricketts v. Adamson*, 483 U.S. 1, 107 S. Ct. 2680, 2689 (1987).

As a matter of constitutional, contractual construction, the following represents the standard for interpreting the meaning:

> Words and phrases that have a technical meaning are construed according to their technical sense, unless it is apparent that a different meaning was intended by the legislature. The general rule that words should be construed according to their usual, natural, plain, ordinary, and commonly understood usage <u>does not apply to technical words</u>

---

[28] Reluctantly but candidly, the appellant concedes that this particular plea proceeding had a sentencing cap provision.

However, from the vantage point of one's critical evaluation of the defining terms (and the plea's corresponding consequences), this fact is entitled to be thoroughly disclosed to the defendant before the plea offer is ultimately accepted and the facts in support of the plea are properly acknowledged by the defendant.

> and phrases <u>that have a peculiar meaning</u>. Words
> and phrases that have acquired a technical meaning,
> whether by legislative definition or otherwise,
> generally are considered to have been used in their
> technical sense. Thus, when statutory words have
> both an ordinary meaning and a peculiar and
> appropriate meaning in law, <u>courts prefer the
> technical meaning</u> unless that construction is
> contrary to the legislative intent.
> C.J.S. *Statutes* §418; emphasis added.

In fact, particularly in the circumstances here, that being the constitutional

contractual nature of the plea agreement, the term 'brandish' is without question a

'term of art' that warrants further definition, clarification, and/or explanation

before a plea to that style of offense can be properly accepted.[29]

> A "term of art" is a word or phrase having
> a specific, precise meaning in a given specialty
> apart from its general meaning in ordinary contexts.
> In the absence of a contrary indication, a court will
> assume that when a statute uses a term of art, a
> legislature intended it to have its established meaning.
> When a legislature uses in a statute a term of art with
> a long history of judicial interpretation, it must be
> presumed that the legislature intended to use the word
> in its technical sense and to incorporate the requirements
> imposed by the jurisprudence regarding that term.
> C.J.S. *Statutes*, *ibid*.

This Court – albeit in the context of a settlement agreement involving a

business involved in the acquiring, management, and sale of real estate on behalf

of investors – has acknowledged the significance of technical terms utilized with

---

[29]    Due to the term being a technical term of art, the statute in question includes
its own definition of the term. See footnote 15, *ante*.

their technical field. "Technical terms and words of art are given their technical meaning when used in a transaction <u>within their technical field</u>." *Atalla v. Abdul-Baki*, 976 F. 2d 189, 194 n.3 (4th Cir. 1992) citing *Restatement (Second) of Contracts*, §203(3)(b); emphasis added in *Atalla*.

An illustration of a common term with its own technical meaning in the circumstances of a criminal prosecution is found in the case of *Barker v. Gonzales*, 347 U.S. 637, 74 S. Ct. 822 (1954).

The common term with its unique and precise technical meaning was 'entry.' The respondent was born in the Philippine Islands in 1913, arriving in the continental United States in 1930, before the independence of the islands in 1934.

After the respondent was convicted in California in 1941 of assault with a deadly weapon and in Washington State of burglary in 1950, administrative proceedings for his deportation were commenced. In 1951, the respondent was ordered to be deported – on the basis he was an alien who 'after entry' was sentenced for crimes of moral turpitude.

However, the Supreme Court found that the respondent did not make an 'entry' into the United States pursuant to §19 of the Immigration Act of 1917. See, formerly, 8 U.S.C. §155(a).

Since the respondent was a United States national – being born in a United States territory, prior to the independence of the territory – his 'arrival' in the

23

continental United States was not the same as an entry of an alien, pursuant to the

Immigration Act.

This technical term of 'entry,' although commonly used, was given its

technical meaning as contemplated by the criminal statute.  "While it is true that

statutory language should be interpreted whenever possible according to common

usage, some terms acquire a special technical meaning by a process of judicial

construction.  So it is with the word 'entry' in §19(a)."  *Barker, supra.*, 74 S. Ct. at

p. 825.

In this instance, the technical term of 'brandish' is an essential element of

the offense with a precise technical meaning, defined by its own subparagraph

within the criminal statute, that was never explored, explained, or expounded upon

in the plea procedure.

This is a fundamental flaw that inhibits the acceptance of Christopher L.

Foster's guilty plea.

> Nevertheless, such a plea cannot support a
> judgment of guilt unless it was voluntary in a
> constitutional sense.  And clearly the plea could
> not be voluntary in the sense that it constituted an
> intelligent admission that he committed the offense
> unless the defendant received 'real notice of the
> true nature of the charge against him, the first and
> most universally recognized requirement of due
> process.'  *Smith v. O'Grady*, 312 U.S. 329, 334,
> 61 S. Ct. 572, 574 (1941).
> *Henderson v. Morgan*, 426 U.S. 637, 96 S. Ct. 2253,
> 2257-2258 (1976); footnote omitted.

24

The *Henderson* decision is uniquely parallel to the circumstances at hand. In *Henderson*, Timothy Morgan had an unusually low mental capacity. Here, Christopher L. Foster did undergo evaluation at the Butner, North Carolina facility.

In *Henderson*, the defendant sought *habeas corpus* relief from his New York state guilty plea. Essential to his prayer for relief was that 'the intent to cause death' – an essential element of the offense of second degree murder – was never fully explained.

In this instance, the concept of 'brandishing the firearm' was never defined or fully, factually developed and thereafter acknowledged by Christopher L. Foster.

Thus, the error in *Henderson*, like the error here, was not harmless. In *Henderson*, the guilty plea was vacated.

In the context of a trial setting, it is abundantly, constitutionally clear that any fact which increases the sentencing calculation must be proven to the trier of the facts beyond a reasonable doubt or admitted by the defendant. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000).

The natural extension of this principle requires that the factual sentencing enhancement provision within a plea proceeding must not only be defined or explained to the individual, but it must be <u>acknowledged</u> by the individual.

25

Whatever a defendant 'fails to say' cannot become a basis for the sentencing court to impose additional punishment.  See for example, *Descomps v. United States*, -U.S.-, 133 S. Ct. 2276, 2288 (2013) (discussing a comparison of a defendant' prior conviction with a commonly understood offense (generic crime) to determine if the individual is eligible for enhanced punishment pursuant to The Armed Career Criminal Act – 18 U.S.C. §924(e); in *Descomps*, the defendant's earlier conviction for a 'burglary' (one's entry without the entry necessarily being unlawful) was insufficient to be a 'burglary' (entering unlawfully) so as to be eligible for enhanced punishment).

An illustration of a consequence that results from this particular plea – lacking in the explanation and acknowledgment of 'brandishing' the firearm – is that contrary to the Sentencing Guideline ¶2K2.4, Commentary 4 (and also Amendment #599 (1 November 2000)), the terminology of the offense is utilized by the Bureau of Prisons to enhance the offender's classification for security reasons and eventual placement.

The appellant acknowledges the administrative procedures and placement of any individual within the Bureau of Prisons[30] may be beyond the scope of this appeal.  However, a proper classification and placement of any individual is one of

---

[30]    "Moreover, a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators."  *Rhodes v. Chapman*, 452 U.S. 337, 101 S. Ct. 2392, 2400 n.14 (1981) citing *Bell v. Wulfish*, 441 U.S. 520, 99 S. Ct. 1861, 1880 n.32 (1979); other citations omitted.

the ideals for any sentence imposed. Opportunities for rehabilitation by way of treatment or training make one facility more appropriate than another for a particular offender. See *Tapia v. United States*, -U.S.-, 131 S. Ct. 2382 (2011) (however, it is incorrect to lengthen a sentence to promote rehabilitation).

## Conclusion

No lay individual could imagine that the verb 'use' combined with 'of a firearm' in a criminal statute would generate a trilogy of decision from the United States Supreme Court. See footnote no. 10, *ante*. Yet, it did.

Due to the comparative confusion or complexity that the term 'brandish' might generate, that technical term was afforded its own statutory definition.

If, however, the technical term is not explained or expounded upon so as to be affirmatively acknowledged by a defendant pleading guilty, the acceptance of the plea is fundamentally flawed.

Thus, Christopher L. Foster is entitled to the plea and sentence being vacated and the proceedings remanded to the United States District Court.

## STATEMENT OF RELIEF

For all of the foregoing, Christopher Lee Foster, the appellant, requests that the guilty plea and its resulting sentence be vacated.

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for appellant respectfully requests oral argument.

Respectfully submitted,

*/s/ William F. X. Becker*
William Francis Xavier Becker
PNC Bank Building, 2nd Floor
260 E. Jefferson Street
Rockville, Maryland 20850
301-340-6966

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 14-4070          **Caption:** United States v. Christopher Foster

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓] this brief contains _____6,559_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ] this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓] this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 [*identify word processing program*] in Times New Roman, 14 Point [*identify font size and type style*]; **or**

[ ] this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) William F. X. Becker

Attorney for Appellant

Dated: 7/10/2014

# CERTIFICATE OF SERVICE

I certify that on  July 10, 2014  the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Adam Kenneth Ake
OFFICE OF THE U.S. ATTORNEY
6500 Cherrywood Lane
Suite 400
Greenbelt, MD 20770
301-344-4340
adam.ake@usdoj.gov

/s/ William F. X. Becker
_____
Signature

7/10/2014
_____
Date